UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK EVANS SPROLES, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | No. 1:23-cv-00431-JMS-KMB |
| | ) | |
| MARK BRIDGE, ET AL. | ) | |
| | ) | |
| *Defendants*. | ) | |

## ORDER

Plaintiff Mark Sproles was enrolled in Indiana Law Enforcement Academy ("ILEA") for training as a result of his recent employment as a Trainee Officer with the Indiana Department of Natural Resources Law Enforcement Division ("IDNR"). During his enrollment in ILEA, he alleges that he was falsely accused of plagiarizing an assignment, which resulted in his dismissal from ILEA,[1] his termination from the IDNR, the loss of future government employment, and stigma to his reputation. Mr. Sproles originally sued ILEA and the IDNR. [Filing No. 1.] But after ILEA and the IDNR filed a motion to dismiss on immunity grounds, [Filing No. 17], Mr. Sproles filed the operative Amended Complaint, [Filing No. 22], naming only individual actors. He sued ILEA officers Mr. Bridge, Mr. Lahay, Mr. Aspenson, Mr. McElhaney, Mr. Stoelting, Mr. Allen, Mr. Pollaro, Mr. Burris, and Mr. Brown ("the ILEA Defendants") in their official and individual capacities. He sued Mr. Horty, the Executive Director of the ILEA, in his official capacity only. And he sued Mr. Fennig, a training sergeant with the IDNR in his individual capacity only. Mr. Sproles sued under 42 U.S.C § 1983, alleging that Defendants deprived him of

---

[1] As will be discussed later, representations in the parties' briefs appear to establish that Mr. Sproles actually completed training at ILEA.

1

due process and deprived him of his liberty to pursue his occupation as a law enforcement officer. Defendants have moved to dismiss Mr. Sproles' claims pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. [Filing No. 35.] The motion is now ripe for the Court's consideration.

## I.
## STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the…claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quotation and citation omitted). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
## BACKGROUND

The following factual allegations are taken from the Amended Complaint, [Filing No. 22], and are accepted as true solely for the purpose of this Order.

Mr. Sproles accepted a position as a Trainee Officer with the IDNR in the fall of 2021. [Filing No. 22 at 4.] As a result of his IDNR position, Mr. Sproles enrolled in ILEA's 226th Basic Class, which took place January through April of 2022. [Filing No. 22 at 5.] Mr. Sproles was elected class president by his peers, and as of mid-April, was on track to graduate with honors. [Filing No. 22 at 5.]

On April 18, 2022, Mr. Bridge escorted Mr. Sproles "to a conference room on the ILEA campus." [Filing No. 22 at 6.] Mr. Sproles was not told what was going on. [Filing No. 22 at 6.] When Mr. Sproles entered the conference room, Mr. Lahay, Mr. Aspenson, Mr. McElhaney, Mr. Stoelting, Mr. Allen, Mr. Pollaro, Mr. Burris, Mr. Brown, and Mr. Fenning were already there. [Filing No. 22 at 6.] Mr. Lahay "accused [Mr.] Sproles of plagiarizing a writing assignment regarding a DUI report." [Filing No. 22 at 6.] Prior to this encounter, Mr. Sproles had not been confronted about plagiarism. [Filing No. 22 at 6.]

In the conference room, a "Staff Review Board [("Review Board")] was immediately conducted" regarding the allegation of plagiarism. [Filing No. 22 at 6.] Mr. Sproles "was not told that a Review Board was being conducted until after the Review Board was finished." [Filing No. 22 at 6.] He was also "not advised that he could request the Review Board hearing to be open"; "was not provided the opportunity to present evidence on his behalf"; "was not given the opportunity to have counsel present at the Review Board hearing" despite having "the right to obtain and utilize representation"; and "was not informed of his right to an appeal." [Filing No. 22 at 7.] The Review Board was not recorded, and "[a] thorough investigation was not made prior to the Review Board being conducted." [Filing No. 22 at 7.]

During the Review Board, Mr. Sproles "claimed and maintained his innocence." [Filing No. 22 at 7.] The Review Board, however, concluded that Mr. Sproles plagiarized the assignment

3

[Filing No. 22 at 8.]  Mr. Sproles "was informed that his recommended punishment would be receiving a zero or failing grade on the writing assignment; being removed from his role as basic class president; that he would be given a second attempt at a different assignment to fulfill his requirement for the writing assignment if requested by the [IDNR]; and his 'honors' distinction would be removed as an ILEA graduate."  [Filing No. 22 at 8.]

ILEA informed the IDNR that Mr. Sproles plagiarized, [Filing No. 22 at 9], and that he "did not meet the requirements to successfully complete the training of the Basic Session," [Filing No. 22 at 8].  The IDNR "determined that it would not request that [Mr.] Sproles be permitted to attempt the writing assignment a second time."  [Filing No. 22 at 9.]  The IDNR then dismissed Mr. Sproles from the ILEA class and terminated his employment.  [Filing No. 22 at 9.]

Mr. Sproles initiated this litigation on March 10, 2023, [Filing No. 1], and filed the operative Amended Complaint on May 26, 2023, [Filing No. 22].  He alleges two violations of his due process rights under the Fourteenth Amendment to the United States Constitution: (1) a claim against Defendants based on the failure of ILEA to "follow its own procedures when it conducted the Review Board" and the failure "to respond to [Mr. Sproles'] appeal request," which deprived Mr. Sproles of due process; and (2) a claim against Defendants based on false statements that Mr. Sproles committed plagiarism, which deprived him of current and future employment with the IDNR and other government entities.  [Filing No. 22 at 10-13.]  Mr. Sproles seeks injunctive relief, compensatory damages, and attorneys' fees.  [Filing No. 22 at 11-13.]  Defendants have filed a Motion to Dismiss all of Mr. Sproles' claims.  [Filing No. 35.]

## III.
### DISCUSSION

### A. Count I: Violation of Due Process

Defendants argue that Mr. Sproles fails to state a due process claim in Count I because he "has failed to demonstrate that he has a [c]onstitutionally protected property interest in his continued education at ILEA and cannot do so." [Filing No. 36 at 5.] Further, they assert that ILEA's procedures and policies do not create a constitutional right to having them followed. [Filing No. 36 at 6.] Defendants cite public education cases to support these arguments. [Filing No. 36 at 5-6.] They also assert that Mr. Sproles fails to state a claim against Mr. Horty (Executive Director of ILEA) because Mr. Sproles has not alleged how Mr. Horty was personally involved in the alleged constitutional deprivations. [Filing No. 36 at 9.] Lastly, Defendants raise the defense of qualified immunity and assert that Mr. Sproles fails to show that the actions taken by Defendants "were clearly established as constitutional violations" or "so obvious that a reasonable state actor would know that his actions violated the Constitution." [Filing No. 36 at 9-10 (quotation and citation omitted).]

In his response, Mr. Sproles argues that he has sufficiently identified a property interest. [Filing No. 39 at 2-5.] He asserts that "the statutory and administrative purposes of the ILEA" show that he has a "property interest in continued education at ILEA." [Filing No. 39 at 3-4.] Mr. Sproles cites to an employment case to support his argument. [Filing No. 39 at 3.] Mr. Sproles also argues that his Amended Complaint sufficiently states a claim against Mr. Horty because he alleges that Mr. Horty has not responded to his timely submitted appeal request. [Filing No. 39 at 7.] Lastly, Mr. Sproles argues that Defendants are not entitled to qualified immunity because their actions were "patently violative" of his due process rights, which were clearly established. [Filing No. 39 at 8.]

In reply, Defendants argue that violations of state law do not amount to violations of constitutional rights. [Filing No. 44 at 2.] They assert that Mr. Sproles' argument regarding mandatory training for law enforcement officers is irrelevant because Mr. Sproles eventually completed ILEA's course and graduated. [Filing No. 44 at 2.] Defendants contend that the employment case cited by Mr. Sproles actually supports their position that Mr. Sproles does not have a constitutionally protected property interest in his continued education at ILEA. [Filing No. 44 at 3.] Defendants also reiterate that they are entitled to qualified immunity. [Filing No. 44 at 6-7.]

Section 1983 creates civil liability for any person who, acting under color of state law, deprives a plaintiff of his constitutional rights. 42 U.S.C § 1983. Here, Mr. Sproles implicates the Fourteenth Amendment's Due Process Clause, which provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A due process claim requires (1) "a constitutionally protected property [or liberty] interest," (2) "a loss of that interest amounting to a deprivation," and (3) "that the deprivation occurred without due process." *Cage v. Harper*, 42 F.4th 743, 738 (7th Cir. 2022) (quoting *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007)). Thus, a plaintiff must allege the loss of a liberty or property interest before the Court addresses whether the procedures satisfied minimum constitutional requirements of fairness. *See id.*

1. *Sufficiency of the Allegations*

Mr. Sproles is not clear in his Amended Complaint as to what right—liberty or property—is impacted by Defendants' actions as it relates to Count I. [*See* Filing No. 22 at 10-11.] In fact, Mr. Sproles seems only to focus on the lack of due process from the Review Board and the appeal process without alleging any property or liberty interest. But a lack of due process alone is not

enough to state a violation of the Due Process Clause. A plaintiff "cannot recover simply because the procedures were unfair, even if they were. The Due Process Clause is not a general fairness guarantee; its protection kicks in only when a state actor deprives someone of 'life, liberty, or property.'" *Doe v. Purdue Univ.*, 928 F.3d 652, 659 (7th Cir. 2019) (quoting U.S. Const. amend. XIV, § 1). This poor pleading leaves the Court without a clear understanding of what right is impacted in Count I. Without identifying the right, Mr. Sproles fails to sufficiently allege a due process claim.

Defendants pick up on this failure and argue in Defendants' Motion to Dismiss that Mr. Sproles has failed to plead "that he had a protected property interest in continuing his education at ILEA, and he cannot do so." [Filing No. 36 at 5.] After realizing that he must plead a property or liberty interest to accompany his allegations of a due process violation, Mr. Sproles accepts Defendants' characterization of the interest as a property interest. He references his "property interest in his continued education" and "training" at ILEA in Plaintiff's Response to Defendants' Motion to Dismiss. [*See* Filing No. 39 at 3-4.] Yet Defendants add more fuel to the confusion fire by changing their characterization of Mr. Sproles' alleged interest in their Reply in Support of Motion to Dismiss, saying that they "argued in their motion to dismiss that [Mr. Sproles] has failed to demonstrate that he has a Federal constitutionally protected *liberty* interest in this case." [Filing No. 44 at 1 (emphasis added).] Overall, the parties' pleadings and arguments regarding Count I are as clear as mud. But because the parties seem to move past Count I's pleading failure and on to arguing whether Mr. Sproles' has a protected *property* interest in his continued education at

ILEA, the Court construes the right at issue to be Mr. Sproles' property right in his continued education at ILEA and will address it.[2]

### 2. Property Interest in Continued Education at ILEA

Mr. Sproles' confusion does not end with his pleadings. Further compounding the confusion is that, in support of his argument that his continued education at ILEA is a protected property interest, Mr. Sproles does not cite to an education case—he cites to an employment case. [Filing No. 39 at 3.] He cites to *Lalvani v. Cook County, Illinois*, 269 F.3d 785 (7th Cir. 2001) for the general principle that "[a] government employee has a property interest in their employment when they have a legitimate claim of entitlement, usually arising by statute or contract. [Filing No. 39 at 3 (citing *Lalvani*, 269 F.3d at 791).] But his attempt to rely on law in the employment context will not do—this is not an employment case, as evidenced by Mr. Sproles' own characterization of his right to "continued education at ILEA," not "continued employment," and the fact that he removed his employer, the IDNR, from the lawsuit.[3] This is an education case.

Mr. Sproles presumably attempts to conflate education with employment because circuit precedent forecloses his education argument in *Doe v. Purdue University*, 928 F.3d 652, 659-60 (7th Cir. 2019). "We have explained that a college education—any education—is not 'property' in the usual sense of the word." *Id.* at 659 (cleaned up) (quotations and citations omitted). In the context of education, a student must establish that a contract entitled him to the specific property

---

[2] In any event, if the alleged right at issue were something else, it is waived for failure to develop it. See *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) ("[I]t is not this court's responsibility to research and construct the parties' arguments." (cleaned up)); see also *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

[3] He is suing one IDNR employee, Mr. Fennig, but only in his individual capacity for damages. [Filing No. 22 at 4.] He is not suing Mr. Fennig for prospective relief. [Filing No. 22 at 4.]

right he was deprived of, "such as the right to a continuing education or the right not to be suspended without good cause." *Id.* at 660 (citation omitted). Here, Mr. Sproles points to no such contract with ILEA, and as such, cannot proceed down the education route.

In any event, *Lalvani* and the employment framework do not help him. In the employment context, "[a] property interest exists only where the government employee has a 'legitimate claim of entitlement' to his job." *Lalvani*, 269 F.3d at 791 (citation omitted). "Such a claim of entitlement is typically rooted in statutory or contractual language indicating that the employee cannot be terminated but for cause." *Id.* (citation omitted). The statute at issue in *Lalvani* had language securing an entitlement to a property interest; it provided that an officer could not be fired "except for cause." *Id.*; *see* 55 Ill. Comp. Stat. § 5/3-14023.

In his attempt to prove "entitlement," Mr. Sproles points to two state laws and the ILEA Student Handbook. [Filing No. 39 at 3-4.] Each attempt fails to show entitlement. The first law he points to is 250 Indiana Administrative Code 2-2-1, which requires that all law enforcement officers complete a minimum basic training course. [Filing No. 39 at 2-3.] 250 IAC 2-2-1 provides:

> All law enforcement officers appointed by the state or any of its political subdivisions on or after July 6, 1972, whether the appointment is on a probationary, permanent, or other than probationary or permanent basis, shall, within one (1) year of the date of the officer's first or original appointment, whether on a full-time or part-time basis, successfully complete the appropriate minimum basic training course prescribed by the board and described in 250 IAC 2-4. Provided, however, that any such officer who has had previous law enforcement experience, including basic law enforcement training meeting or exceeding the standards enumerated in 250 IAC 2-4, may, upon proof of such previous experience and training and upon recommendation by the executive director and approval by the board, obtain a waiver of the training mandated herein or be allowed to test out on any or all phases of the basic course; however, this waiver provision is not applicable to

persons certified by the board solely upon successful completion of the town marshal basic training program prescribed in 250 IAC 2-4.

Second, he notes Indiana Code § 5-2-1-1, which establishes and explains the purposes behind mandatory training for law enforcement officers. [Filing No. 39 at 2-3.] Indiana Code § 5-2-1-1 provides:

> (a) In order to ensure the public safety and general welfare of the people of the state of Indiana and to promote equity for all segments of society, a program of mandatory training for law enforcement officers is established.
>
> (b) This chapter shall be interpreted to achieve said purposes through the establishment of a consistent and uniform statewide:
>     (1) deadly force policy and training program; and
>     (2) defensive tactics policy and training program;
> as well as minimum standards regarding other law enforcement training.
>
> (c) It is the intent of this chapter to encourage all law enforcement officers, departments, and agencies within this state to adopt standards which are higher than the minimum standards implemented under this chapter. However, any policy or program created or implemented pursuant to subsection (b)(1) or (b)(2) may not be modified or altered in any way by any Indiana law enforcement agency, office, or department.
>
> (d) The chief executive officer of a law enforcement department or agency in Indiana shall use all reasonable means to ensure that the law enforcement officers within the department or agency comply with this chapter. The chief executive officer shall submit to the executive director of the board, not later than March 31 of each year, a written report detailing the basic and inservice training status of each law enforcement officer on the payroll of the department or agency. The report must also include similarly detailed information pertaining to the training status of each police reserve officer.

Reading the statutes together, he argues that he "was required to complete training at ILEA as part of his continued employment with [the IDNR]." [Filing No. 39 at 3.] Yet, despite naming

10

the laws, Mr. Sproles does not point the Court to any language "indicating that the employee [or officer] cannot be terminated but for cause," as *Lalvani* instructs.  This is because he cannot do so—the language in the above laws does not provide that training officers cannot be dismissed from ILEA training except for cause.  Mr. Sproles is attempting to turn an obligation of mandatory training into a right yet fails to cite the necessary statutory language to support the argument.

His attempt to create entitlement out of contractual language fairs no better.  Mr. Sproles relies on the ILEA Student Handbook, which "requires a thorough preliminary investigation to be conducted in allegations of 'serious offenses.'"  [Filing No. 39 at 4.]  The Student Handbook, however, does not establish a contractual promise of continued training.  "An employee manual or policy handbook that specifies a set of pre-termination procedures does not create an enforceable property right."  *Catinella* v. *Cnty. of Cook, Ill.*, 881 F.3d 514, 518 (7th Cir. 2018) (rejecting plaintiff's argument that he had a property interest in continued employment because a policy manual required certain procedures to be followed before termination, which he did not receive, and stating, "[a]t best, that's an allegation about process, not a property right" and "[p]rocess is not an end in itself") (quotation and citation omitted).  The ILEA Student Handbook did not provide Mr. Sproles with a property interest in completing his education.  Accordingly, Mr. Sproles fails to state a claim against all Defendants on Count I because he fails to state a protected property right.

### 3. Qualified Immunity

Although the Court could end the analysis with the above discussion, because the Defendants raised the defense of qualified immunity, the Court will address it.  "A public official is entitled to qualified immunity from suit unless he violated a clearly established constitutional right."  *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563

U.S. 731, 735 (2011)). Dismissal of a claim based on qualified immunity is only appropriate where "the plaintiffs' well-pleaded allegations, taken as true, do not 'state a claim of violation of clearly established law.'" *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996)). Whether qualified immunity applies involves two questions, which may be addressed in either order: "(1) whether the facts alleged . . . by the plaintiff establish a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Dockery*, 911 F.3d at 466 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "To show that a right is clearly established, the plaintiff must demonstrate that existing caselaw at the time of the events in question 'placed the statutory or constitutional question beyond debate.'" *Pearson*, 555 U.S. at 232 (quoting *al-Kidd*, 563 U.S. at 741); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.") (citations and quotations omitted).

Although qualified immunity is generally addressed at summary judgment, "[t]here is no hard-and-fast rule . . . against resolving qualified immunity on the pleadings." *Doe v. Purdue Univ.*, 928 F.3d at 665. The Seventh Circuit has cautioned that "[t]he reason for deferring it to summary judgment is that an [official's] entitlement to qualified immunity often depend[s] on the particular facts of a given case, . . . and the Federal Rules of Civil Procedure do not require a plaintiff to include much factual detail in a complaint." *Id.* (quotations and citations omitted). However, the existence of qualified immunity is not always factually dependent—"it is sometimes clear on the face of the complaint that the constitutional right invoked was not clearly articulated in the case law. In that circumstance, the existence of qualified immunity is a purely legal question

that the court can address on a motion to dismiss." *Id.* (quotation omitted). Such is the case for Mr. Sproles' alleged property right.

Even assuming that the laws discussed above provide a protected property interest in his continued training, Mr. Sproles has not identified existing caselaw at the time of the events in question that places the statutory question beyond debate. *See al-Kidd*, 563 U.S. at 741. As explained above, the only case that Mr. Sproles cites as supporting his property right in continued education is *Lalvani*, 269 F.3d 785. [Filing No. 39 at 3.] But *Lalvani* is inapposite. *Lalvani* may clearly establish that an officer has a protected property interest in his job when a statute provides that he cannot be terminated except for cause, but that is not analogous to the situation here. Mr. Sproles has not pointed to any law clearly establishing his right to continued education with ILEA. Accordingly, Mr. Sproles has not shown that a right to ILEA training was clearly established. Because Mr. Sproles fails to state a protected property right and Defendants are entitled to qualified immunity even if he did, Defendants' Motion to Dismiss is **GRANTED** as to Count I.[4]

### B.  Count II: Deprivation of a Liberty Interest Without Due Process

Defendants argue that Mr. Sproles has not adequately alleged that he has a recognized liberty interest because such a claim requires more than mere defamation. [Filing No. 36 at 7.] They assert that Mr. Sproles has "failed to allege any change in his legal status or a loss of a legally recognized right or statute he previously held," which is fatal to his claim. [Filing No. 36 at 7.] Defendants note that, even after the allegations of plagiarism, Mr. Sproles still "was able to complete the ILEA [] course, he just was not sponsored by [the IDNR] any longer." [Filing No. 36 at 8.] Defendants also argue that Mr. Sproles fails to allege any personal involvement by Mr.

---

[4] Because the Court has found that Mr. Sproles fails to establish a property right, it need not address whether he has sufficiently alleged Mr. Horty's personal involvement in the alleged constitutional deprivation. Like all other Defendants, Mr. Horty is entitled to judgment as to Count I.

Horty. [Filing No. 36 at 8.] Finally, Defendants argue that they are entitled to qualified immunity on this claim, as well. [Filing No. 36 at 9.]

Mr. Sproles responds that he sufficiently alleges a stigmatic harm beyond mere defamation. [Filing No. 39 at 5.] He argues that "[t]he right or status that was extinguished in this instance was [his] continued training at ILEA, and his employment at [the IDNR], which required him to complete his training at ILEA." [Filing No. 39 at 5.] He asserts that "the failing grade and resulting termination from [the IDNR] are the primary bases for the stigma (i.e. defamatory) element of the claim." [Filing No. 39 at 6.] He also argues that Defendants are "conflat[ing] a showing required for a summary judgment issue with the issue at hand by arguing that [Mr.] Sproles has not shown that he has any prospective employment opportunities that have been foreclosed to him." [Filing No. 39 at 6.] As to Mr. Horty, Mr. Sproles asserts that he has sufficiently alleged personal involvement because Mr. Sproles was required to submit an appeal request to Mr. Horty, and Mr. Sproles alleges that Mr. Horty did not respond. [Filing No. 39 at 7.] Finally, Mr. Sproles argues that Defendants are not entitled to qualified immunity because when Defendants acted, "it was well established that injuries resulting from defamation by a state actor coupled with an alteration of legal status provided the basis for a stigma-plus claim under the Fourteenth Amendment." [Filing No. 39 at 9.]

Defendants reply that Mr. Sproles' allegations that he lost future employment opportunities is not enough to state a claim for a protected liberty interest because after he completed his ILEA course and graduated, he was "free to pursue his chosen occupation with any other law enforcement agency." [Filing No. 44 at 5.] Therefore, they argue, he has not alleged that is it "virtually impossible" for him to find new employment in his chosen field of law enforcement as

14

required.  [Filing No. 44 at 4.]  Defendants also reiterate that they are entitled to qualified immunity.  [Filing No. 44 at 6.]

Before addressing the parties' arguments regarding Mr. Sproles' alleged liberty interest, the Court turns to Defendants' arguments regarding the lack of Mr. Horty's personal involvement. While Mr. Horty is not personally involved to the extent of being present at the Review Board, Mr. Sproles submitted an appeal request to Mr. Horty, which Mr. Sproles alleges that Mr. Horty has not responded to.  [Filing No. 22 at 10.]  The lack of response to the appeal solidifies, and is thus a part of, ILEA's determination that Mr. Sproles plagiarized.  Further, Mr. Sproles is seeking prospective relief in the form of further appeals, which can arguably only be provided by Mr. Horty, ILEA's Executive Director.  Therefore, the Court finds that Mr. Sproles sufficiently alleged Mr. Horty's personal involvement such that he shall remain in the case at this stage.  And because Defendants do not parse out individual liability as to any other Defendants, the Court finds no issue with the sufficiency of the allegations as to their involvement.

As with deprivations of property, the Due Process Clause of the Fourteenth Amendment protects against deprivations of liberty.  U.S. Const. amend. XIV.  Unlike in Count I, Mr. Sproles plausibly identifies an interest here.  [*See* Filing No. 22 at 11-13.]  He invokes a liberty interest and more specifically, his right to "occupational liberty—the liberty to follow a trade, profession, or other calling."  *Biggs v. Chicago Bd. of Educ.*, -- F.4th --, 2023 WL 6056084, at *3 (7th Cir. Sept. 18, 2023) (quotation and citations omitted).  Occupational liberty claims arise after an adverse employment action when the employer stigmatizes a former employee "by making public comments impugning [his] good name, honor, or reputation or imposes a stigma that forecloses other employment opportunities within [his] occupation."  *Id.* at *4 (quotation and citation omitted).

15

To adequately allege an occupational liberty interest, Mr. Sproles must satisfy the "stigma plus" test, which derives from the Supreme Court's decision in *Paul v. Davis*, 424 U.S. 693 (1976), that "reputation alone, apart from some more tangible interests such as employment," does not implicate a liberty interest "sufficient to invoke the procedural protection of the Due Process Clause." *Paul*, 424 U.S. at 701. The "stigma plus" test requires Mr. Sproles to show "that the state inflicted reputational damage accompanied by an alteration in legal status that deprived him of a right he previously held."[5] *Doe v. Purdue Univ.*, 928 F.3d at 661; *see also Biggs*, -- F.4th --, 2023 WL 6056084, at *4.

Mr. Sproles alleges that "[t]he false statement[] that [Mr.] Sproles plagiarized was communicated to [the IDNR] by ILEA." [Filing No. 22 at 12.] This satisfies the first part of the "stigma plus" test because it alleges that the ILEA Defendants inflicted reputational damage by (1) determining that Mr. Sproles plagiarized and (2) communicating that to the IDNR. As to an alteration in legal status, Mr. Sproles alleges that he was terminated from the IDNR because ILEA was informed that he committed plagiarism. [Filing No. 22 at 9.] Going from employed to unemployed is a change sufficient to satisfy "an alternation in legal status." Lastly, as to the deprivation of a right (here, his occupational liberty), Mr. Sproles alleges that "he was prohibited employment at the [IDNR], future employment opportunities as a member of the [IDNR], and future government employment." [Filing No. 22 at 10.] At this stage, this allegation is sufficient to show that he was deprived of other employment opportunities in his chosen occupation of law enforcement.

---

[5] The state's infliction of reputational damage requires public disclosure. *See Biggs*, -- F.4th --, 2023 WL 6056084, at *4. However, the parties do not discuss this requirement, and the Court is only addressing arguments raised.

The Defendants insist that because Mr. Sproles has not shown the specific prospective employment opportunities that have been foreclosed to him, he fails to state a claim. [Filing No. 36 at 7.] However, at this stage, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of Mr. Sproles. *See Active Disposal Inc.,* 635 F.3d at 886. Mr. Sproles need not yet prove that employment opportunities have been foreclosed to him; it is sufficient that he plausibly alleges such. Whether the facts show that opportunities have been foreclosed to him is a matter more properly addressed at summary judgment.

Accordingly, Mr. Sproles has sufficiently met the "stigma plus" test and has stated a liberty interest. *See Doe v. Purdue Univ.*, 928 F.3d at 658, 662-63 (finding that plaintiff plausibly alleged a "stigma plus" claim by alleging that Purdue's "official determination" that he was guilty of sexual violence, which was disclosed to the Navy, "caused his expulsion from the Navy ROTC program . . . and foreclosed the possibility of his re-enrollment in it.").

Stating the deprivation of a liberty interest, however, does not mean that Mr. Sproles has stated a claim because, as explained above, a due process claim requires (1) a constitutionally protected interest, (2) "a loss of that interest amounting to a deprivation," and (3) "that the deprivation occurred without due process." *Cage,* 42 F.4th at 738 (quoting *Moss,* 473 F.3d at 700); *see also Doe v. Purdue Univ.*, 928 F.3d at 663 (after determining that the "stigma plus" test was met, the court turned to "whether [the plaintiff] adequately claimed that [the state] used fundamentally unfair procedures in determining his guilt"). Mr. Sproles alleges the procedures were unfair, [*see* Filing No. 22 at 7], and Defendants do not now challenge those allegations. Therefore, the Court finds that Mr. Sproles sufficiently states an occupational liberty claim.

Yet, stating a claim is not the end of the matter either. Defendants have raised qualified immunity. Thus, Mr. Sproles has a chance to recover damages "only if his right to receive

17

procedural due process in the disciplinary proceeding was clearly established." *Doe v. Purdue Univ.*, 928 F.3d at 665. The Seventh Circuit in June 2019 recognized that alleging educational discipline which resulted in an official determination of guilt and foreclosed the possibility of future employment was sufficient to state the deprivation of a liberty interest. *Id.* at 661-63. The Seventh Circuit decided *Doe v. Purdue University* approximately two and half years before Defendants' actions. Accordingly, the right to occupational liberty in a very similar context was clearly established such that Defendants are not entitled to qualified immunity at this stage. Defendants' Motion to Dismiss is **DENIED** as to Count II.

### C. Future Proceedings

Although the Court denies Defendants' Motion to Dismiss as to Mr. Sproles' occupational liberty claim, it notes that the Seventh Circuit recently clarified that, in asserting an occupational liberty claim, the plaintiff "faces a high hurdle to show that [he] has suffered a tangible loss of employment opportunities from a defendant's public stigmatizing statements." *Biggs*, -- F.4th --, 2023 WL 6056084, at * 4. The plaintiff in *Biggs,* an interim principal of a Chicago public school, was fired and asserted an occupational liberty claim against her employer for statements it made in connection with her termination. *Id.* at *1. The Seventh Circuit held that, although the plaintiff applied to seven positions over a few months, such evidence was insufficient "to permit a reasonable jury to find that she ha[d] been excluded from that occupation altogether." *Id.* at *6. It noted that "given the limited number of positions to which [she] applied, no reasonable jury could find that she ha[d] experienced anything more than the customary difficulties and delay that individuals encounter when looking for a new job, especially where, as here, they were fired from their previous one." *Id.* at *7. Accordingly, in order to ultimately succeed on his occupational liberty claim, Mr. Sproles will be required to provide evidence that he does not have a job in law

18

enforcement despite vigorously applying for other law enforcement jobs.  *See id.*  Because Rule 11 requires that the parties' "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," the parties should focus their discovery on Mr. Sproles' employment search and status.  Fed. R. Civ. P. 11(b)(3).

Further, the Court notes that Mr. Sproles seeks prospective relief with respect to the appeal process at ILEA, but that appears to be undermined by his admission that he completed the course. [*See* Filing No. 39 at 6 ("However, as Defendants recognize, he was no longer an employee of [the IDNR] when he did complete his training.").]  This is of jurisdictional concern to the Court since Mr. Sproles is seeking injunctive relief with respect to his training at ILEA.  If a claim is moot, the Court lacks jurisdiction.  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam) ("Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions . . .; our impotence to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.") (quotation and citation omitted).  Because Mr. Sproles is seeking injunctive relief, Mr. Sproles is **ORDERED** to show cause no later than **October 19, 2023**, as to why his occupational liberty claim for injunctive relief should not be dismissed as moot in light of his possible graduation from ILEA.

### IV.
#### CONCLUSION

The Court, having considered the above action, makes the following rulings:

1. Defendants' Motion to Dismiss, [35], as to Count I is **GRANTED** as to all Defendants and Count I is **DISMISSED WITH PREJUDICE**.[6]

---

[6] The Court finds that dismissal with prejudice is appropriate because Mr. Sproles would not be able to cure the deficiency the Court has identified.  *See Arreola v. Godinez*, 546 F.3d 788, 796

2. Defendants' Motion to Dismiss as to Count II is **DENIED** as to all Defendants.

3. Mr. Sproles is **ORDERED** to show cause no later than **October 19, 2023**, as to why his occupational liberty claim for injunctive relief should not be dismissed as moot in light of his possible graduation from ILEA.

No partial final judgment shall issue at this time.

Date: 9/28/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**

---

(7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend . . . where the amendment would be futile.").