UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARK EVAN SPROLES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-cv-00431-TWP-KMB |
| | ) |
| MARK BRIDGE In his individual and official capacities, | ) |
| THOMAS LAHAY In his individual and official capacities, | ) |
| RANDY ASPENSON In his individual and official capacities, | ) |
| ERIC MCELHANEY In his individual and official capacities, | ) |
| BRENT STOELTING In his individual and official capacities, | ) |
| NICK POLLARO In his individual and official capacities, | ) |
| LANCE BURRIS In his individual and official capacities, | ) |
| MICHAEL BROWN In his individual and official capacities, | ) |
| TIMOTHY HORTY In his official capacity, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Mark Bridge ("Bridge"), Thomas Lahay ("Lahay"), Randy Aspenson ("Aspenson"), Eric McElhaney ("McElhaney"), Brent Stoelting ("Stoelting"), Nick Pollaro ("Pollaro"), Lance Burris ("Burris"), Michael Brown ("Brown"), and Timothy Horty ("Horty"), (collectively "the Defendants") (Filing No. 86). Plaintiff Mark Sproles ("Sproles") initiated this action pursuant to 42 U.S.C. § 1983 alleging the Defendants deprived him of his liberty to pursue his chosen occupation in law enforcement without due process (Filing No. 22). For the reasons explained below, summary judgment is **granted**.

# I. BACKGROUND

## A. Factual Background

The following facts are largely undisputed. Where disputes arise, however, they are construed in a light most favorable to Sproles as the nonmovant. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

### 1. The Parties

In October 2021, Sproles was hired as a probationary Conservation Officer with the Indiana Department of Natural Resources ("IDNR") Law Enforcement Division. (Filing No. 88-1 at 20–21). Ind. Code § 14-9-8-12 provides that "[a]ll new conservation officers appointed to the division are probationary employees for one (1) year from the date of appointment." Thus, Sproles's employment was conditioned on his successful completion of the Indiana Law Enforcement Academy's ("ILEA") Basic Session, which he began in January 2022. *Id.* at 21, 26. In March 2022, Sproles was elected Class President of ILEA Class 226 by his classmates.

Defendants Spratt and Stahl were Sproles's roommates at ILEA. Stahl was also the squad leader of Sproles's squad, D squad. Defendants Lahay, McElhaney, Stoelting, Pollaro, Burris, Brown, Horty, and Aspenson were all instructors at ILEA and members of its Review Board.

### 2. Plagiarism Allegations and Investigation

As part of their final assessment, Lahay assigned ILEA students a written examination in the form of a DUI report. (*See* Filing No. 88-2 at 1 ). ILEA students were given a week to complete the report writing assignment. *Id*. Sproles admits that he retrieved the writing sample from Stahl's desk "to see how the general idea of a DUI report should look." (Filing No. 88-34 at 37). Sproles submitted his final report to his squad leader and roommate, Stahl, on April 15, 2022. (Filing No. 88-22 at 21).

The same day, ILEA staff member, Brown, informed Lahay that Stahl had accused Sproles of plagiarizing his final report. (Filing No. 88-21 at 18–19, 23). Lahay began investigating the allegations, which included interviewing Sproles's roommates, Stahl and Spratt. *Id.* at 23. After finishing his investigation, Lahay concluded there was enough evidence of plagiarism to assemble a "Review Board" for a more formal inquiry. (Filing No. 88-22 at 37).

### 3. The Review Board

To this point, Sproles was unaware of the allegations against him and the ongoing investigation. (*See* Filing No. 88-34 at 3, 7). Nevertheless, the Review Board convened a hearing on April 18, 2022. (Filing No. 88-25 at 3). Initially, the only individuals present at the hearing were members of the Review Board. *Id.* Those members included Defendants Bridge, Lahay, Aspenson, McElhaney, Stoelting, Allen, Pollaro, Burris, and Brown, as well as Sergeant John Fennig of IDNR. *Id.* When the hearing began, Lahay explained the allegations and shared the results of his independent investigation with the group. (Filing No. 88-22 at 49). Other board members were then permitted time for questioning. *Id.* at 49–50.

Sproles arrived at the hearing about fifteen minutes after it began (Filing No. 88-25 at 3), and Lahay explained his belief that Sproles copied another student's DUI report by directly quoting it in his own work (Filing No. 88-34 at 4–5). Sproles vigorously denied those allegations, *id.*, though he admitted to viewing another student's report while completing his own (Filing No. 88-2 at 27). Lahay asked Sproles if he had looked at another report, and Sproles admitted to looking at Rucker's report, but maintains that he did not plagiarize the writing. *Id.* at 23. When Sproles requested a copy of the allegedly plagiarized assignment, Lahay refused. (Filing No. 88-34 at 4). The Review Board also did not give Sproles the option to have counsel present or to present evidence on his behalf. (Filing No. 88-2 at 26, 33–34).

3

After several more rounds of questioning, the Review Board found Sproles guilty of plagiarism, a violation of the ILEA Code of Conduct. (Filing No. 88-23 at 22–23). As punishment, the Review Board gave Sproles a failing grade on the DUI report and required him to make a class-wide confession of his plagiarism and resign as ILEA class president. (Filing No. 88-2 at 42); *see also* (Filing No. 88-23 at 18–20).

### 4. Sproles's Termination and Aftermath

The day after the Review Board hearing, Fennig told Sproles the INDR no longer needed his services and offered him the opportunity to resign. (Filing No. 88-2 at 47–48) *see also* (Filing No. 88-37 at 6). Sproles declined the offer and was terminated. (Filing No. 88-2 at 47–48); (Filing No. 88-37 at 6). Nevertheless, Sproles was informed that he could come back later to complete the ILEA program, and a year later he completed the last two days of work, graduated, and obtained his "Tier I" certification. (Filing No. 88-3 at 2, 3).

Since April 2022, Sproles applied for sixteen law enforcement positions. (*See* Filing No. 88-34 at 18–31). During his job search, the Hendricks County Sheriff's Office contacted ILEA concerning the plagiarism allegations and the Review Board's decision. (Filing No. 88-47 at 8). Defendant Lahay "gave a factual recitation" of the investigation and the outcome of the hearing as required by Ind. Code § 36-8-2-2[1] but otherwise directed Hendricks County to ILEA's general counsel. *Id.* Hendricks County ultimately denied Sproles's application because his "interview

---

[1] Ind. Code § 36-8-2-2(b) provides:

> "Before hiring a person as a law enforcement officer … the hiring department or agency [of a police or law enforcement system] shall contact every law enforcement department or agency that has employed (or currently employs) the applicant and request that the employing department or agency provide … [a] complete and unredacted copy of all findings and orders related to disciplinary action or internal investigations … involving the officer[.]"

Subsection (c) provides further that "[a]n agency or department that receives a request under subsection (b) shall … comply with the request not later than ten (10) business days from receipt of the request[.]" Ind. Code § 36-8-2-2(c).

score" fell below the cutoff. (Filing No. 88-42 at 1). Sproles remained unemployed despite obtaining conditional offers of employment which were ultimately withdrawn for failure to pass certain physical and psychological examinations; Carmel police stated that they rejected him because he did not receive a high enough score on their tier one test; and Bartholomew rejected him because he failed the oral interview before the Peer Review Board. (Filing No. 88-34 at 30–31; Filing No. 88-44 at 1; *Id*. at 23-24).

### B. Procedural Background

Sproles initiated this action on March 10, 2023 (Filing No. 1) and later filed an Amended Complaint (Filing No. 22), which is now the operative pleading. Sproles brings two claims under 42 U.S.C. § 1983 alleging that: (1) Defendants "did not follow its own procedures" in conducting the Review Board hearing, depriving Sproles of future employment opportunities; and (2) Defendants' "false statement" that Sproles plagiarized placed a stigma upon him that caused a tangible loss of future employment opportunities. (Filing No. 22 at 10–12). He seeks "prospective relief in the form of a Review Board hearing" or "a public name-clearing hearing," as well as compensatory damages, attorneys' fees and costs. *Id.* at 13.

The Defendants moved to dismiss both claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court granted the motion with respect to Count I and dismissed the claim with prejudice. (Filing No. 45). The Court denied the motion as to Count II, holding that Sproles properly alleged an occupational liberty claim and that Defendants were not entitled to dismissal of the qualified immunity claim. *Id.* The Defendants' request for summary judgment on Count II is now ripe for review.

## II.     LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the Court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotations marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties

nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.    DISCUSSION

Count II of the Amended Complaint alleges Violation of Due Process Rights Under 42 U.S.C 1983. (Filing No. 22 at 11-12). Sproles argues that Defendants knowingly, maliciously, and publicly published false statements accusing him of plagiarism, causing him to lose "his job with IN [Department of Natural Resources (DNR)] and future employment opportunities as a member of IN DNR and future government employment." *Id*.  The Defendants seek summary judgment arguing that "[n]o Defendant deprived Sproles of employment without due process of law, no Defendant made any stigmatizing public statement about Sproles and the review board; and all Defendants believed in good faith that the findings of the review board were accurate due to the results of the investigation and Sproles's confessions." (Filing No. 86 at 1-2).  Lastly, Defendants argue that they are entitled to qualified immunity. *Id*.

Before proceeding to the merits, the Court will first address two threshold matters raised by the parties.

#### A.  Threshold Matters

First, Defendants argue that Sproles's request for injunctive relief in the form of a Review Board hearing is moot because Sproles completed his training at ILEA.  (Filing No. 87 at 43–44). The Court addressed this argument in an earlier show cause order, finding Sproles's request for injunctive relief is not moot because the Court could still grant Sproles a name-clearing hearing pursuant to *Codd v. Velger*, 429 U.S. 624, 627 (1977).  (Filing No. 56 at 3–5).  There has been no

7

change in circumstances since that decision; thus, for the reasons previously explained, the request for injunctive relief is not moot.

Second, Sproles argues the Defendants' Exhibit S (Filing No. 88-29)—ILEA Police Department Voluntary Witness Statements of Stahl, Sprat, and Rucker—should be stricken from the record because the statements therein were neither sworn nor made under penalty of perjury as required by Federal Rule of Civil Procedure 56(c)(4) and 28 U.S.C. § 1746. (Filing No. 94 at 9–10). Defendants counter that the preamble to each statement, that the declarant "swear[s] or affirm[s] that the statement I am giving hereunder is truthful and accurate," is an indication of truthfulness sufficient to be considered on summary judgment. (Filing No. 97 at 2).

An affidavit is "a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath. Affidavits are admissible in summary judgment proceedings if they are made under penalties of perjury." *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (citations and quotation marks omitted). Otherwise, "unsworn documents purporting to be affidavits may be rejected." *Id.* (citing 28 U.S.C. § 1746).

The statements in Exhibit S were neither sworn before someone authorized to administer an oath nor made under penalty of perjury. However, in *Pfeil,* the Seventh Circuit also held "so long as the documents comply with 28 U.S.C. § 1746, and in the interests of justice, a district court should not be unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements of execution are satisfied." *Id.* Defendants argue on reply, that if this Court determines that the preamble in the witness statement is not enough to be considered under explicit penalties of perjury, exhibit S should not be stricken, rather it should be considered not for the truth of the statements, but to consider the Defendants' actions after receiving the information contained therein. (Filing No. 97 at 2).

At present, the Court need not determine whether exhibit S should be stricken, because this exhibit is not relevant to the Court's decision on summary judgment, and it will not be considered as evidence at this stage of the proceedings.

### B. Merits

Sproles's sole remaining § 1983 claim is that the Defendants violated his rights under the Fourteenth Amendment's Due Process Clause, which prohibits any state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Sproles invokes his right to "occupational liberty—the liberty to follow a trade, profession, or other calling." *Biggs v. Chi. Bd. of Educ.*, 82 F.4th 554, 559 (7th Cir. 2023) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992)). A state may infringe on a plaintiff's occupational liberty if it makes a "charge against him that might seriously damage his standing and associations in his community that places his good name, reputation, honor, or integrity … at stake" or when it "imposes on the plaintiff a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)). Before a liberty interest is implicated, however, there must be some "alteration of a legal status, such as the loss of an employment position." *Id.*

Under this framework, Sproles must establish that: (1) the defendants made stigmatizing comments about him; (2) those comments were publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure. *Biggs*, 82 F.4th at 560 (quoting *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010)). Because the Court finds the claim fails on the third prong, the analysis will begin with this prong.[2]

---

[2] The parties spill much ink over the first prong, whether the plagiarism charges were false and, therefore, defamatory. But it is the "official determination of guilt, and not the preceding charges or any accompanying rumors that allegedly

The standard for determining whether a plaintiff suffered a tangible loss of other employment opportunities is high: Sproles must establish that the statements made it "*virtually impossible* for [him] to find new employment within [his] occupation." *Biggs*, 82 F.4th at 560 (quoting *Ratliff v. City of Milwaukee*, 795 F.2d 612, 625–26 (7th Cir. 1986)). "Mere frustration or delay in getting a new job will not suffice." *Id.* (collecting cases). Moreover, the plaintiff must demonstrate his problems obtaining employment were a "result" of the public stigmatizing statements. *Id.* at 564 (citing *Palka*, 623 F.3d at 454). If Sproles cannot make this showing, his occupational liberty claim must fail, and summary judgment must be granted.

Defendants argue that Sproles cannot demonstrate a tangible loss of employment opportunities because he simply failed to consistently and diligently seek out employment. Sproles was first terminated in April 2022 but he did not make efforts to obtain new employment while waiting to receive his Tier I Certificate. (Filing No. 84-4 at 18). When he did seek employment, Defendants contend Sproles only applied to sixteen law enforcement-related jobs, which is hardly enough to show he experienced anything more than the customary delay and frustration in finding a new job. (Filing No. 87 at 38–39). Defendants also contend that Sproles cannot show the statements *caused* him to be frozen out of the occupation because his prospective employers had other reasons for rejecting him. *Id.* at 40–41.

In response, Sproles asserts that after March 2022, he stopped looking for law enforcement opportunities by recommendation of his therapist. (Filing No. 88-4 at 19). Sproles represents that he was truthful in the application process and when asked why he was terminated, explained the plagiarism allegations. Sproles points out there is no benefit to not be truthful and forthcoming in

---

deprived [Sproles] of occupational liberty." *Doe v. Purdue Univ.*, 928 F.3d 652, 662–63 (7th Cir. 2019). That determination changed Sproles' status and allegedly foreclosed the possibility of his future employment in law enforcement. Therefore, the Court need not wade into arguments concerning the truth of the plagiarism charges or Defendants' "good faith belief" in them.

10

the application process, because Ind. Code § 36-8-2-2, requires prospective law enforcement employers to contact every law enforcement agency that has employed the applicant. (Filing No. 94 at 17).

Sproles then argues that the Indiana statute compelling disclosure of an officer's disciplinary history to prospective law enforcement employers, imposed the same legal impediment to future employment as the child abuse reporting statute in *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005). (Filing No. 94 at 16–18). In *Dupuy*, Illinois law required prospective employers to consult a central child abuse register before hiring someone and to notify the Department of Children and Family Services in writing of its decision to hire a person indicated as a perpetrator of child abuse or neglect. *Dupuy*, 397 F.3d at 511. The Seventh Circuit held that placement of an individual's name on a child abuse register placed "a significant, indeed almost insuperable, impediment on obtaining a position in the entire field of child care" because it rendered them virtually ineligible for positions in that field. *Id.*

Neither parties' argument gets it exactly right. Defendants cite to no case holding that applying to and being rejected from sixteen jobs is not enough to demonstrate a tangible loss of employment opportunities beyond customary frustration and delay. In the case they do rely on, the court found that applying to seven jobs—only one of which was in the plaintiff's chosen field––was not enough. *See Biggs*, 82 F.4th at 563. Here, Sproles applied to more than double that, all of which were in his chosen field of law enforcement. (*See* Filing No. 88-34 at 18–31). Defendants provide no evidence to assist the Court in determining how many applications would have sufficed to demonstrate a tangible loss of opportunity, especially given that Sproles was applying to law enforcement positions over a nearly two-year period.

Sproles's reliance on *Dupuy* is similarly misplaced. It is true that Ind. Code § 36-8-2-2 compels the disclosure of "all findings and orders related to disciplinary action or internal investigations" to prospective law enforcement employers. But unlike the statute in *Dupuy*, the statute here does not require prospective employers to inform any officials, in writing or otherwise, of its decision to hire an individual with a disciplinary history. While plagiarism is a serious charge in that field, the disclosure of such charges does not effectively bar any applicant from employment because employers may nonetheless find an individual's experience, remediation, or other qualities justifies hiring them, and they will not be held accountable for that decision to another authority.

Sproles has not identified a single instance of a lost employment opportunity as a result of any individual Defendants' alleged disclosure. At bottom, the evidence does not create a genuine dispute about whether Defendants' public disclosure of the Review Board hearing results made it virtually impossible for Sproles to find work in law enforcement.. Indeed, Sproles was offered conditional employment with at least two law enforcement agencies, one of which rejected him only after it determined he could not pass the psychological examination. (*See* Filing No. 88-44 at 1). Moreover, the evidence shows that while Lahay shared the results of the Review Board hearing with the Hendricks County Sheriff's Office as required by law, Hendricks County's decision not to hire Sproles followed Sproles's receipt of an interview score that "fell below the 90 point cutoff." (Filing No. 88-42 at 1). That Sproles was rejected for law enforcement positions for reasons unrelated to the publication of his plagiarism charges dooms his claim.

Because no reasonable jury could conclude that the Defendants' public stigmatizing statements caused a tangible loss in employment opportunities for Sproles, the Court need not address whether Defendants are entitled to qualified immunity, and summary judgment on Count II of the Amended Complaint is **granted**.

## IV. CONCLUSION

For the reasons explained above, Defendants' Motion for Summary Judgment on Count II of the Amended Complaint (Filing No. 86) is **GRANTED** and Sproles's claim is **DISMISSED** with prejudice.

With both claims being resolved, final judgment will issue in a separate order.

**SO ORDERED**.

Date: 9/24/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Thomas S. Bowman
ALLEN WELLMAN MCNEW HARVEY LLP
tsb@awmh.net

Katherine A Meltzer
Office of Indiana Attorney General
katherine.meltzer@atg.in.gov

Adrienne Nicole Pope
INDIANA ATTORNEY GENERAL
adrienne.pope@atg.in.gov

Thomas Pratt
Office of Indiana Attorney General
Thomas.Pratt@atg.in.gov

Erica Lee Sawyer
INDIANA ATTORNEY GENERAL
Erica.Sawyer@atg.in.gov

James Michael Sedam
Metzger Rosta
jimmy@metzgerrosta.com

Dawn Elizabeth Wellman
ALLEN WELLMAN MCNEW
dew@awmlaw.com